Filed 3/20/23 P. v. Young CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095629 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2017-0000864) |
| v. | |
| JC DARNELL YOUNG, | |
| Defendant and Appellant. | |

Defendant JC Darnell Young opened fire on three unarmed family members, seriously injuring two of them. A jury found him guilty of three counts of assault with a semiautomatic firearm, one count of being a felon in possession of a firearm, and one count of unlawfully possessing ammunition. The jury also found various firearm and great bodily injury enhancements true. The trial court declined to strike or dismiss any of the attached enhancements, finding that doing so would endanger public safety and not be in the interest of justice. It sentenced defendant to an aggregate determinate term of 20 years eight months in prison, including the middle term on the principal count.

1

Defendant raises several sentencing issues on appeal. He first argues that under Penal Code[1] section 1385, as amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1), the trial court erroneously declined to dismiss one or more of the attached enhancements because at least three mitigating factors under the newly enacted legislation were present and the court's finding that dismissal would pose a danger to public safety was arbitrary and unreasonable. He next contends that under section 1170, as amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (Stats. 2021, ch. 731, § 1.3), the court should have imposed a presumptive low term on the principal count rather than the midterm because evidence showed his mental illness contributed to the offenses. Finally, defendant asserts section 654 prohibited concurrent sentences for both unlawful possession offenses and that the court erred in awarding presentence custody credit.

We conclude the trial court did not abuse its discretion under Senate Bill 81 by refusing to dismiss one or more of the enhancements. We further conclude that defendant forfeited his Senate Bill 567 challenge by failing to raise it below, but that the court erred in not staying the two-year term on defendant's possession of ammunition conviction under section 654 and in calculating presentence credit. We will modify the judgment to stay the sentence on count 8, award defendant 2,111 total presentence credit, and affirm the judgment as modified.

BACKGROUND

A.      *The Shooting*

In January 2017, defendant lived in Stockton across the street from his aunt, C.N., and her two children, F.C. and S.C. (his cousins). He would often visit C.N.'s apartment for food or cigarettes.

---

[1] Undesignated statutory references are to the Penal Code.

On the morning of January 20, 2017, defendant knocked on C.N.'s apartment door and F.C. answered. Defendant asked for a cigarette, mumbled something about his mother, who recently had health problems, and then shot F.C. in the ankle and the thigh. C.N. tried to pull F.C. out of harm's way.

Defendant shot C.N. below the knee, fracturing her tibia, and fled. While S.C. tried to close the front door, defendant returned, fired another shot, and fled again. The bullet hit the door, but S.C. was not injured. An expended bullet was found in the living room, and an expended shell casing was located outside near the front door.

### B.    The Charges

Defendant turned himself in a few days later, and he was arrested and charged with three counts of attempted murder (§§ 664, 187, subd. (a); counts 1-3), three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 4-6), being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 7), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 8).[2] For counts 1 and 2, it was alleged that he intentionally and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and that he personally and intentionally discharged a firearm for count 3 (§ 12022.53, subd. (c)). For counts 4, 5, and 6, it was alleged that defendant personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)).

### C.    Competency Proceedings

The trial court twice declared defendant incompetent to stand trial, suspended criminal proceedings, and sent him to Napa State Hospital for treatment. Multiple doctors reported that defendant suffered from some type of psychotic or schizophrenic disorder identified in the fifth division of the Diagnostic and Statistical Manual of Mental

---

[2] For purposes of counts 7 and 8, at trial defendant stipulated that he had a 2003 felony conviction for being a felon in possession of a firearm.

Disorders. They noted defendant harbored fixed, paranoid delusions that his appointed counsel, the district attorney, and the victims were conspiring against him to falsely identify him as the perpetrator. After a contested hearing in March 2021, the court found defendant's competence had been restored and it reinstated criminal proceedings.

### D. The Trial and Verdicts

Trial commenced in May 2021. F.C. and S.C. testified to the above-described facts. C.N. had passed away before trial due to causes unrelated to the shooting, but her preliminary hearing testimony was admitted and read to the jury. Defendant testified on his own behalf, denying he shot his family members and claiming that he had been at a friend's house the day of the shooting.

The jury found defendant not guilty of the three attempted murder counts but guilty of all remaining charges. The jury also found the alleged firearm and great bodily injury enhancements true.

### E. Sentencing

Prior to the sentencing hearing, defendant filed a sentencing brief that acknowledged there were aggravating factors in the case but requested the court consider defendant's well-documented history of mental illness as a mitigating factor to impose no more than the lower or middle term. To support his request, defendant cited rule 4.423(b)(2) of the California Rules of Court,[3] which provides that circumstances in mitigation include that the defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime.

Defense counsel argued that while the jury rejected defendant's claim that he was not the shooter, defendant's "testimony, his recollection of events, and even his state of mind at the time of the crime, were all likely impacted by his well-documented history of

---

[3] Undesignated rule references are to the California Rules of Court.

mental illness." Counsel attached a copy of a November 2018 section 1372 report prepared by Napa State Hospital doctors, which provided a concise summary of defendant's mental health history with psychotic, paranoid, and delusional thinking. Defendant's sentencing brief did not reference the newly amended section 1170, or otherwise request imposing the lower term under subdivision (b)(6) of that statute.

The People requested the maximum term of 30 years four months with the sentence on count 8 (possession of ammunition) imposed and stayed under section 654. The People did not address any aggravating or mitigating factors, but asked the court to consider the evidence presented at trial.

Defendant filed a supplemental sentencing brief referencing several recent legislative enactments, including Senate Bill 567 and Senate Bill 81. Regarding Senate Bill 567, defendant noted it amended section 1170, subdivision (b) to require that certain aggravating factors be found true beyond a reasonable doubt by the jury or stipulated to by a defendant before the court could impose an upper term, and argued that defendant's own criminal history did not warrant an aggravating term. However, defendant did not mention or otherwise address the circumstances under which a trial court now must impose the lower term under Senate Bill 567's amendments to section 1170, subdivision (b)(6). Regarding Senate Bill 81, defendant's supplemental sentencing brief asserted that three mitigating factors under the newly amended section 1385, subdivision (c) weighed strongly in favor of dismissing one or more of the enhancements, including that there were multiple enhancements, a possible sentence of over 20 years, and a connection between the offenses and defendant's mental illness.

At the sentencing hearing in January 2022, the court noted that it had read and considered the probation report as well as the parties' sentencing briefs. The court then explained that the law had changed regarding proving aggravating factors to support an upper term sentence, specifically citing newly amended section 1170, subdivision (b)(2). The court indicated, however, that it did not intend to impose an upper term sentence.

5

The prosecutor argued that the court should impose the upper term because the victims were completely defenseless and vulnerable inside their own home, that defendant fired the gun multiple times directly at the victims causing great bodily injury, and that there was no provocation. As for enhancements, the prosecutor asserted none of the enhancements were cumulative or excessive, so the court should impose them all even though multiple enhancements were alleged and the aggregate sentence might exceed 20 years.

Defense counsel objected that an upper term sentence was inappropriate under the new law because none of the cited factors were stipulated to or proven beyond a reasonable doubt to the jury. As for mitigating factors, counsel argued that "the entire ordeal that we've gone through these past several years has been a result of, you know, well-documented mental illness of [defendant]." According to defense counsel, the "victim stated it," and the court could receive and review its own file and the various competency proceedings and institutionalizations under section 1368 as evidence of defendant's history of mental illness, which he argued was a substantial mitigating factor under section 1385, subdivision (c)(3)(D).

In rebuttal, the prosecutor argued that there was no evidence presented that defendant's criminal acts were related to a mental health condition. When the court asked whether defense counsel had any response, he replied, "No."

The court first addressed whether to strike any of the enhancements. Although it acknowledged that there was evidence defendant had a mental illness, the court found it did not rise to the level of a defense. Under section 1385, subdivision (c)(5), the court also specifically found that defendant's mental illness did not substantially contribute to defendant's involvement in the offenses.

Given the extremely violent nature of the offenses, the court further found that it would not be in the furtherance of justice to strike the enhancements because it would endanger public safety. The court stated: "I think there is clear danger to the public

6

safety, not only of these three victims, but also of other people, innocent people, if these enhancements were stricken because of the . . . extremely violent nature of this offense. So as far as dismissing the enhancements, first of all, completely unarmed, taken unawares, no self-defense issue. I don't see a basis to strike the enhancements."

While the court found that defendant had a record, it did not find that it was "aggravated." Considering section 1385 and section 1170, the court chose count 4 as the principal term and imposed the midterm of six years, plus a consecutive midterm of four years for the firearm enhancement (§ 12022.5, subd. (a)) and three years for the great bodily injury enhancement (§ 12022.7, subd. (a)). The court imposed consecutive one-third the midterm sentences for counts 5 and 6, plus consecutive one-third the midterm sentences for the attached enhancements. For counts 7 and 8, the court imposed concurrent terms of two years for each offense. Defendant's total aggregate sentence was 20 years eight months.

The court imposed various fees and fines and awarded defendant 1,328 days of presentence credit. Defendant timely appealed.

DISCUSSION

I

*Senate Bill 81*

Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)[4] The new law applies to criminal defendants sentenced after January 1, 2022. (§ 1385, subd. (c)(7).)

---

[4] Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), which took effect on June 30, 2022, made technical, nonsubstantive changes to section 1385 that do not affect the issues on appeal.

7

When defendant was sentenced on January 31, 2022, the trial court imposed the midterm of four years for the firearm enhancement (§ 12022.5, subd. (a)) and three years for the great bodily injury enhancement (§ 12022.7, subd. (a)) that were found true as to count 4 (§ 245, subd. (b)), the assault on F.C. It also imposed one-third the midterm sentences of one year four months for the firearm enhancement and one year for the great bodily injury enhancement on count 5 (the assault on C.N.), and one year four months for the firearm enhancement on count 6 (the assault on S.C.). Defendant contends the court prejudicially erred by declining to strike or dismiss some or all of these enhancements under Senate Bill 81.

### A.      Standard of Review

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374 (*Carmony*).) A trial court may abuse its discretion where "its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 377-378.) The party attacking the sentence bears the burden of clearly showing that the sentencing decision was irrational or arbitrary. (*Id.* at pp. 376-377.) Absent such a showing, " ' "the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 377-378.) We will not reverse merely because reasonable people might disagree with the trial court's discretionary sentencing choice. (*Id.* at p. 378.) A reviewing court is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. (*Ibid.*)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a [sentencing] allegation without considering the legal principles and policies that should have guided the court's actions." (*Carmony, supra*, 33 Cal.4th at p. 377.) Thus, whether the trial court in this case abused its discretion depends on the scope of that discretion under

8

amended section 1385. We review this question of statutory interpretation de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694; *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)

      *B.      Senate Bill 81 and Amended Section 1385*

      Senate Bill 81 amended section 1385 to provide that the presence of one or more of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement[ ] unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) As pertinent here, section 1385, subdivision (c) specifically provides:

      "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

      "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] . . . [¶]

      "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

      "(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

      "(D) The current offense is connected to mental illness." (§ 1385, subd. (c)(1)-(2).)

For purposes of section 1385, "a mental illness is a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia." (§ 1385, subd. (c)(5).) "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(5).)

*C. Analysis*

Defendant contends the trial court abused its discretion in declining to dismiss either the firearm enhancements on counts 4, 5, and 6, or the great bodily injury enhancements on counts 4 and 5, or both, under amended section 1385 because three mitigating circumstances weighed greatly in favor of their dismissal, namely, that (1) multiple enhancements were alleged in the case (§ 1385, subd. (c)(2)(B)); (2) application of the enhancements could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); and (3) the current offenses were connected to mental illness (§ 1385, subd. (c)(2)(D) & (5)). He further challenges the court's finding that dismissal would not be in the in the furtherance of justice because it would endanger public safety.

Defendant first argues that the plain language of amended section 1385, subdivision (c)(2)(B) mandates dismissal of all but one enhancement where, as here, multiple enhancements are alleged. He cites the portion of subdivision (c)(2)(B) that provides: "In this instance, *all enhancements* beyond a single enhancement *shall* be

10

dismissed" to support his argument. (§ 1385, subd. (c)(2)(B), italics added.) We disagree with defendant's reading of the statute.

Subdivision (c)(1) and (2) of section 1385 expressly refer to the sentencing court's discretion in determining whether to dismiss an enhancement. Subdivision (c)(1) of section 1385 provides that a sentencing court must dismiss an enhancement "if it is in the furtherance of justice to do so." This provision accords the trial court general discretion to determine whether dismissal of an enhancement is "in the furtherance of justice." Subdivision (c)(2) of section 1385 directs the trial court in "exercising its discretion" to "consider and afford great weight to evidence" the defendant offers showing that "any of the mitigating circumstances in subparagraphs (A) to (I) are present," adding that "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Read together, these phrases direct the trial court to give great weight to evidence of the presence of the enumerated circumstances and that such proof weighs greatly in favor of dismissing the enhancement. However, if the court finds dismissing the enhancement would endanger public safety, proof of a mitigating circumstance does not weigh greatly in favor of dismissal.

The language of subdivision (c)(1) and (2) of section 1385 cannot be reconciled with defendant's assertion that a court has no discretion when it comes to subdivision (c)(2)(B). Subdivision (c)(1) and (2) of guide the exercise of discretion but do not eliminate it with respect to any of the "mitigating circumstances in subparagraphs (A) to (I)." (§ 1385, subd. (c)(2).)

For the same reasons, the language in subdivision (c)(2)(C) of section 1385—that an "enhancement shall be dismissed" where application of the enhancement could result in a sentence of over 20 years—does not mandate dismissal or otherwise deprive the court of discretion under the statute. (See, e.g., *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18 [after finding that dismissing a firearm enhancement would endanger

11

public safety, the trial court was not required to consider and afford great weight to evidence that application of the enhancement could produce a sentence of over 20 years, in its exercise of what § 1385 explicitly acknowledges to be the discretion that it affords].) Thus, the fact that defendant's total aggregate sentence, including the enhancements, was 20 years eight months did not compel dismissal of any of the proven enhancements.

The parties dispute whether a third mitigating circumstance—that the current offenses were connected to mental illness under subdivision (c)(2)(D) of section 1385—was proven at sentencing. The trial court found it was not.

Defendant challenges the court's adverse finding, arguing there was extensive evidence in the record that he suffered from a mental illness at the time of the offenses, citing the prolonged competency proceedings below and the many reports from the evaluating physicians that diagnosed defendant with a delusional, psychotic disorder or schizophrenic disorder. He also notes C.N.'s statements after the incident that defendant was "Schitzo," and had been treated for mental issues for a very long time.

While the People acknowledge that proceedings in the case were suspended multiple times pursuant to section 1368, that there were reported diagnostic impressions of psychotic and personality disorders, and that there were orders for antipsychotic medication, such evidence suggested only the *presence* of mental illness, but not the necessary *connection between* mental illness and defendant's offenses that subdivision (c)(2)(D) of section 1385 requires. That is, the trial court reasonably could have concluded that defendant failed to establish his mental illness "substantially contributed to [his] involvement in the commission of the offense," (§ 1385, subd. (c)(5)) which "clearly implies" a factor more significant in weight from that of a mere contributing factor. (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2022) § 12:11.)

12

Even if we assume, without deciding, that the mental illness mitigating factor was sufficiently proven below, the fact that defendant's mental illness was connected to his offenses alone does not mean the court erred in declining to dismiss one or both of the enhancements. This is because the trial court expressly found that dismissing the enhancements to impose a lesser sentence would not be in the furtherance of justice because it would endanger public safety. Having reviewed the record, we cannot say the court abused its discretion in so finding.

Unlike defendant argues, the trial court did not arbitrarily find that dismissing the enhancements would endanger public safety. Instead, in making the public safety finding, the court expressly noted the extremely violent nature of defendant's present offenses. According to the court, it believed there was a "clear danger to the public safety, not only of these three victims, but also of other people, innocent people, if these enhancements were stricken because of the . . . violent nature of this offense." This was an appropriate consideration.

As the court explained, defendant went to his aunt's apartment under the guise of requesting a cigarette and then suddenly opened fire on three defenseless victims in their home without any ability for his family members to defend themselves. The court found that such extreme violence not only demonstrated a risk to the three victims in this case should defendant receive a lesser sentence, but also that members of the public at large would likely be endangered as defendant engaged in these violent crimes without any provocation whatsoever.

And although defendant was a felon prohibited from owning or possessing a firearm (§ 29800, subd. (a)(1)), the court emphasized that defendant nevertheless obtained a gun to carry out the offenses, which would not have occurred had defendant not had the gun. Furthermore, as the People point out, defendant was written up eight times while in jail, three of which were for fighting, the probation officer determined defendant presented a high risk for reoffending, and although the court found defendant's

13

prior record was not aggravating, he did have several prior convictions for drug offenses, domestic violence, and elder abuse. It was reasonable to conclude, then, that defendant's prospects of conforming to the law and not endangering others was low. Based on the foregoing, the trial court's determination that defendant posed a risk to public safety is supported by the evidence.

Defendant nonetheless argues the record cannot support the court's endangerment finding because his psychiatric symptoms had stabilized in response to medication. We note, however, that one of the physicians who evaluated defendant's competency found that while the medication helped lessened the intensity of his delusional beliefs, his condition was only partially in remission on the medication. And, defendant voluntarily stopped his medication. At a contested competency hearing in March 2021, defendant's own expert opined that defendant discontinued his medication because he did not believe he needed it, likely leading to increased psychiatric symptoms to such an extent that, in her opinion, he was no longer competent to stand trial. Given this evidence, it would not be irrational to conclude that defendant had not in fact stabilized on medication or that the court could be assured he would take the medication in the future to mitigate his dangerous conduct.

Defendant also argues that because he still would have been subject to a prison sentence even if one of the enhancements were dismissed, the court's dangerousness finding cannot stand. But that fact alone does not render the court's finding that dismissing the enhancements would endanger public safety unreasonable. The court logically could have decided that the only way to adequately protect the public was by imposing the full sentence for all offenses and enhancements. That defendant might have been sentenced to a lesser prison term does not mean the court's decision not to impose a lesser term was arbitrary or irrational.

Based on the totality of the evidence before the court, it cannot be said that the court's finding that dismissing the enhancements would endanger public safety was so

14

irrational or arbitrary that no reasonable person could agree with it. (*Carmony, supra*, 33 Cal.4th at p. 377.) The court therefore did not abuse its discretion in finding that dismissing the enhancements was not in the interest of justice under section 1385.

## II

### *Senate Bill 567*

Defendant challenges his midterm sentence under Senate Bill 567, which amended section 1170 to limit a court's ability to impose lengthy sentences. The People counter defendant forfeited this argument by not raising it at his January 31, 2022, sentencing hearing. We agree with the People.

### A. *Senate Bill 567's Amendments to Section 1170*

Effective January 1, 2022, Senate Bill 567 changed the requirements for using aggravating circumstances and altered sentencing discretion under section 1170. (Stats. 2021, ch. 731, § 1.3.) Among other things, Senate Bill 567 amended section 1170 to prohibit upper term sentencing unless there are circumstances in aggravation that justify imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances (1) have been stipulated to by the defendant, (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial, or (3) relate to the defendant's prior convictions and are based on a certified record of conviction. (§ 1170, subd. (b)(1)-(3).) The court must set forth on the record the facts and reasons for choosing the sentence imposed. (§ 1170, subd. (b)(5).)

Senate Bill 567 also created a presumption in favor of the low prison term if a defendant's youth or psychological, physical, or childhood trauma contributed to the commission of the offense. Section 1170, subdivision (b)(6) now provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice," the court must impose the low term if a defendant "experienced psychological, physical, or

15

childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence" if such trauma "was a contributing factor in the commission of the offense."

At least one court has found that psychological trauma based on mental illness may be a circumstance qualifying for section 1170, subdivision (b)'s lower term presumption, although it found that mental illness alone was insufficient to qualify for the lower term presumption. (*People v. Banner* (2022) 77 Cal.App.5th 226, 241 (*Banner*).) Instead, the court found that "[p]sychological trauma must attend the [mental] illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)." (*Ibid.*)

B.     *Forfeiture*

"As a general rule, a party who does not raise an argument below forfeits the argument on appeal." (*In re Abram L.* (2013) 219 Cal.App.4th 452, 462.) Here, the People contend defendant forfeited his Senate Bill 567 challenge because defendant never asked the court to consider amended section 1170, subdivision (b)(6) during his January 2022 sentencing hearing, or whether defendant's mental illness resulted in psychological trauma that contributed to the offenses. We agree.

Defendant was sentenced just short of a month *after* Senate Bill 567's effective date. (Stats. 2021, ch. 731, eff. Jan. 1, 2022.) Accordingly, this ameliorative legislation was in effect at the time of defendant's sentencing hearing and his failure to raise the applicability of Senate Bill 567's presumptive lower term in section 1170, subdivision (b)(6) has forfeited the argument on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684 [appellant forfeited argument that the trial court erred in imposing the upper term pursuant to § 1170 as it existed at the time he was sentenced because he failed to object to the upper term sentence when it was imposed], review granted Oct. 12, 2002, S276237.)

While it is true that defendant asked the court to consider evidence of his mental illness as a mitigating factor that lessened his culpability under rule 4.423(B)(2), he never specifically requested that the court determine *whether his mental illness resulted in*

16

*psychological trauma that contributed to the offense*, which is a necessary requirement for applying a presumptive low term under amended section 1170, subdivision (b)(6). Defendant's trial argument based on rule 4.423(B)(2) is *not* the same as his new appellate argument based on amended section 1170, subdivision (b)(6). (See, e.g., *Banner, supra*, 77 Cal.App.5th at p. 242 [recognizing that "not finding mental illness a mitigating factor under the California Rules of Court does not preclude a separate finding psychological trauma is a contributing factor to the crime under section 1170, subdivision (b)(6)"].)

Similarly, although defendant filed a supplemental sentencing brief that referenced Senate Bill 567, defendant only addressed the part of Senate Bill 567 that amended section 1170 to limit the court's discretion to impose an upper term sentence under subdivision (b)(2). Defendant's supplemental sentencing brief did not cite to, reference, or otherwise discuss amended section 1170, subdivision (b)(6), nor did it argue the court must presume the lower term applied because he suffered from a mental illness that resulted in a psychological trauma that contributed to the offenses.

Likewise, at the sentencing hearing, defense counsel argued that defendant had a history of mental illness and that the entire ordeal was the result of that mental illness. But counsel *never asserted* that defendant *suffered psychological trauma* as a result of his mental illness or that such *psychological trauma* contributed to the offenses. As *Banner* acknowledged, the statute requires something more than simply mental illness; it requires psychological trauma that contributes to an offense. (§ 1170, subd. (b)(6)(A); see also *Banner, supra*, 77 Cal.App.5th at p. 241 [finding mental illness alone does not qualify for presumptive lower term under § 1170, subd. (b)(6); "[p]sychological trauma must attend the illness, and *that* trauma must contribute to the crime" under the statute].) The absence of such an argument below forfeits his claim on appeal that the trial court erred in selecting the middle term rather than a presumptive low term under amended section 1170, subdivision (b)(6).

## III

### *Section 654*

Defendant contends, and the People concede, that the court erred by imposing concurrent two-year terms for the offenses of being a felon in possession of a firearm (count 7) and unlawful possession of ammunition contained in that same firearm (count 8). We agree with the parties that the sentence on count 8 must be stayed under section 654.

Section 654 provides, in part, that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute does not prohibit multiple convictions for the same conduct, only multiple punishments. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses." (*Ibid.*) Furthermore, it is error for a trial court to impose a concurrent sentence if section 654 applies. (*People v. Jones* (2012) 54 Cal.4th 350, 353.) The proper procedure, if the statute applies, is to impose a sentence but stay its execution, despite little practical difference between a concurrent sentence and stayed sentence. (*Ibid.*)

Citing *People v. Lopez* (2004) 119 Cal.App.4th 132, defendant argues he may not be punished for both possession of the firearm and possession of the ammunition in the firearm. In *Lopez*, the court held section 654 barred multiple punishment for the defendant's convictions for unlawful possession of a firearm and unlawful possession of ammunition based on his possession of a single loaded firearm. (*Lopez*, at pp. 137-138.) The court explained that where "all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Id.* at p. 138; *People v. Broadbent* (2020) 47 Cal.App.5th 917, 922 ["Courts have found section 654 prohibits punishing a defendant for both being a felon in

18

possession of a firearm and unlawful possession of ammunition when all of the ammunition in question was loaded into the firearm or had been fired from it"]; *People v. Sok* (2010) 181 Cal.App.4th 88, 100 [trial court erred in failing to stay sentences on ammunition counts "because the ammunition at issue in those two counts was either loaded into [the defendant's] handgun or had been fired from that gun" and no evidence supported an implied finding that the defendant had different or multiple objectives in possessing the loaded firearm and possessing the ammunition in the gun].)

In this case, the prosecutor argued to the jury that it could find defendant possessed ammunition because there was a bullet and casing found on the ground and bullet holes in the victims' legs and defendant repeatedly fired shots at his family members. At sentencing, the prosecutor acknowledged that count 8 should be stayed under section 654. The trial court, however, imposed concurrent sentences for both count 7 and count 8. This was error.

Like in *Lopez*, here there was but a single act that violated multiple statutes—defendant, a former felon, possessed a loaded firearm, which he used to shoot his family members. Thus, count 7 and count 8 were based on the same indivisible course of conduct. While he could be convicted of both unlawful possession of the ammunition in the gun and being a felon in possession of the loaded firearm, the trial court could not lawfully punish him for both offenses. Section 654 requires that the punishment on the ammunition count (count 8) be stayed.

IV

*Custody Credits*

The parties agree that the trial court erred in awarding defendant presentence custody credit. We concur.

Under section 2900.5, a defendant sentenced to county jail or to state prison is entitled to credit against the term of imprisonment for days spent in custody before sentencing. (§ 2900.5, subd. (a); *People v. Johnson* (2002) 28 Cal.4th 1050, 1053.) This

provision applies to custodial time in jail as well as in a state hospital. (§ 2900.5, subd. (a) ["[i]n all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in jail . . . [or] hospital, . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment"].) Persons convicted of violent felonies, like defendant was here (§ 667.5, subd. (c)(8) [definition of violent felony includes any felony in which a defendant inflicts great bodily injury as charged and proved under § 12022.7, or any felony in which a defendant uses a firearm as charged and proved under § 12022.5]), are limited to earning 15 percent presentence conduct credit. (§ 2933.1, subd. (c) ["Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person" convicted of violent felony].)

In this case, the court awarded defendant 1,155 days of actual presentence credit plus an additional 173 days of conduct credit for a total of 1,328 presentence credit days. Defendant, however, was in custody from January 22, 2017, until he was sentenced on January 31, 2022—a total of 1,836 actual days of custody. He was thus entitled to 1,836 days of actual credit (§ 2900.5, subd. (a)), plus 275 additional days of presentence conduct credit (§§ 2933.1, subd. (c), 4019, subds. (a)(1), (8), (b) & (c)) for a total of 2,111 days of presentence credit. We shall modify the judgment accordingly and direct the trial court to correct the abstract of judgment to reflect defendant's actual credit. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [incorrect calculation of legally mandated custody credit is an unauthorized sentence that may be corrected at any time].)

DISPOSITION

The judgment is modified to stay the sentence on count 8 under section 654 and to award defendant 1,836 days of actual credit and 275 days of conduct credit for a total of 2,111 days of presentence credit. The clerk is directed to prepare an amended abstract of

20

judgment and forward it to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


                                                        /s/
                                              BOULWARE EURIE, J.


We concur:


     /s/
RENNER, Acting P. J.


     /s/
EARL, J.